UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

REGENT AEROSPACE CORPORATION,

        Plaintiff,

vs.

        CASE NO.: 1:21-cv-23629-JLK

AFFILIATED FM INSURANCE COMPANY,

        Defendant.
_____/

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Defendant Affiliated FM Insurance Company, pursuant to Rule 56 of the Federal Rules of Civil Procedure and Local Rule 56.1, moves for summary judgment, and states:

**I.  SUMMARY.**

Affiliated FM is entitled to summary judgment for two reasons. First, the damages Regent seeks are not recoverable under the insurance policy as a matter of law. Second, Regent should be precluded from presenting evidence of the damages it seeks because their purported damages were either inadequately disclosed in fatally deficient reports by experts who were withdrawn or failed to appear for their depositions, or entirely concealed by Regent until a week before the discovery deadline.

**II.  AFFILIATED FM IS ENTITLED TO SUMMARY JUDGMENT ON THE DAMAGES REFERENCED BY REGENT'S JULY 15, 2022 EXPERT REPORTS, TO WHICH REGENT DEFERRED IN ITS INTERROGATORY ANSWERS.**

    **A.  By its June 2022 answers to interrogatories, Regent limited itself to the damages stated in its July 15, 2022 expert reports.**

Regent's June 2022 answers to interrogatories regarding all aspects of the damages it claims in this lawsuit, including the amounts, nature, elements, method of calculation, and documents supporting the damages, defer to its experts and expert reports. (Statement of Material

CASE NO.: 1:21-cv-23629-JLK

Facts ("SMF") ¶ 27.)[1] On the July 15, 2022 deadline for it to provide expert disclosures, including reports as required by Rule 26(a)(2) (*see* D.E. 19), Regent disclosed three experts: Bruce Smith for business interruption and extra expense, Dennis James for code upgrades, and David Abreu for business personal property. (SMF ¶ 28.) On March 20, 2023, eight months later and just a week before the March 29, 2023 discovery deadline, Regent withdrew Mr. Smith. (SMF ¶ 34.) Mr. James and Mr. Abreu's reports were grossly deficient, and both failed to appear at their respective scheduled depositions.[2] Regent never supplemented or corrected its June 2022 answers to interrogatories or its expert disclosures. Discovery closed on March 29, 2023. (D.E. 32.) By rule, Regent is limited to the damages stated in its expert reports disclosed in July 2022. Fed. R. Civ. P. 26(e), 37(c). But the damages referenced in Regent's expert disclosures are not recoverable under the insurance policy.

    **B.**     **Because Regent never supplemented or corrected its answers to interrogatories or its expert disclosures, it cannot supply "evidence on a motion, at a hearing, or at a trial" of any damages other than what it disclosed in its July 15, 2022 expert reports.**

Regent is limited to the damages it stated in its June 2022 answers to interrogatories because Regent failed to timely supplement or correct said answers. Further, because Regent's June 2022 answers to interrogatories regarding damages defer entirely to its experts and expert reports, Regent was required to timely supplemented its Rule 26(a) disclosures, interrogatory answers, responses to document requests, and expert disclosures in order to seek any different damages than those disclosed in its July 15, 2022 expert reports or supply evidence of damages

---

[1] Regent's signature page is dated June 20, 2022, its notice of service of its amended interrogatory answers is dated June 17, 2022. (SMF ¶ 26.)

[2] Affiliated FM has separately moved to strike both Mr. James and Mr. Abreu for failure to appear for their scheduled depositions, and because their disclosed reports fail to comply with Rule 26(a)(2) and the Court's scheduling order. (D.E. 49, D.E. 50.)

CASE NO.: 1:21-cv-23629-JLK

through anyone other than the experts it disclosed. Rule 26(e)(1) requires that "A party who has made a disclosure under Rule 26(a)—or who has responded to an interrogatory, …must supplement or correct its disclosure or response: (A) in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect." Fed. R. Civ. P. 26(a)(2). But Regent never supplemented its discovery responses or expert disclosures.[3]

Thus, with respect to damages, under Rule 37, Regent cannot use any "information or witness" other than the experts and expert reports it disclosed on July 15, 2022, "to supply evidence on a motion, at a hearing, or at a trial." Fed. R. Civ. P. 37(c). As this Court has held, "[c]ompliance with Rule 26 is not a casual requirement" with respect to expert disclosures. *Cordell Consultant, Inc. v. Abbott*, No. 11-80416-CIV, 2015 WL 11539506, at *3 (S.D. Fla. July 6, 2015) (citations omitted). "When a party fails to comply with Rule 26, the sanction of exclusion is automatic and mandatory unless the sanctioned party can show that its violation was either justified or harmless." *Companhia Energetica Potiguar v. Caterpillar Inc.*, No. 14-CV-24277, 2016 WL 3102225, at *5 (S.D. Fla. June 2, 2016) (citing Fed. R. Civ. P. 37(c)(1); *U.S. v. Batchelor-Robjohns*, No. 03-201640-CIV, 2015 WL 1761429, at *2 (S.D. Fla. June 3, 2005) (granting motion to strike expert's report and excluding expert from testifying and explaining that "Rule 37(c)(1) requires absolute compliance with Rule 26(a), in that it mandates that a trial court punish a party for discovery violations in connection with Rule 26 unless the violation was harmless or substantially justified.")). Under Rule 37(c)(1), "[e]xclusion is 'automatic' if it was without substantial justification." *Certain Underwriters at Lloyd's of London v. Black Gold Marine, Inc.*,

---

[3] Instead, Regent concealed, until the March 22, 2023 deposition of its Rule 30(b)(6) designee (just a week before the end of discovery), its intent to seek damages other than those included in its expert reports. (*See* SMF ¶¶ 12, 14, 16-17, 19, 25.) As set forth in section III.A, below, Regent concealed all costs it seeks relating to Knight Commercial, the construction company Regent concealed for seven months after signing a contract with it on August 22, 2022.

CASE NO.: 1:21-cv-23629-JLK

No. 19-23586-CIV, 2022 WL 3550294, at *6 (S.D. Fla. Aug. 18, 2022) (citing Fed. R. Civ. P. 37(c) advisory committee's note). And, as this Court has noted, "[c]ourts routinely strike expert reports or exclude expert testimony which is not timely disclosed, even if the consequence is to preclude a party's entire claim." *U.S. v. Marder*, 318 F.R.D. 186, 191 (S.D. Fla. 2016) (quoting *Warren v. Delvista Towers Condo. Ass'n, Inc.*, No. 13-23074-CIV, 2014 WL 3764126, at *1 (S.D. Fla. July 30, 2014)).[4]

### C. Affiliated FM is entitled to summary judgment as to the damages referenced in Regent's July 15, 2022 expert disclosures.[5]

#### 1. Affiliated FM is entitled to summary judgment on Regent's claims for business interruption and extra expense because Regent deferred entirely to its only disclosed expert for those alleged damages but has since withdrawn said expert.

Regent's Amended Complaint alleges it suffered "business interruption loss, and extra expense." (D.E. 5 ¶¶ 14, 20.) Its answers to interrogatories state that all requested information

---

[4] Affiliated FM has separately moved to preclude Regent from using any "information or witness to supply evidence on a motion, at a hearing, or at a trial, in this matter" of any alleged damages other than the expert witnesses Regent disclosed on July 15, 2022 and the alleged damages disclosed in their expert reports provided that day. (D.E. 51.)

[5] Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). Thus, the Court must conduct "the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250.

The party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). That is, once the movant has met its burden to show absence of material fact, the party opposing summary judgment must then come forward with affidavits or other evidence demonstrating there is indeed a genuine issue for trial. Fed. R. Civ. P. 56(c); *Celotex Corp.*, 477 U.S. at 323-25; *Anderson*, 477 U.S. at 248. To survive summary judgment, "the nonmoving party must offer more than a mere scintilla of evidence for its position; indeed, the nonmoving party must make a showing sufficient to permit the jury to reasonably find on its

CASE NO.: 1:21-cv-23629-JLK

about the damages it claims, including the amounts, nature, elements, method of calculation and documents supporting its damages, would come from its experts and expert reports. (SMF ¶ 27.) Regent then disclosed Bruce Smith as its *only* expert witness for business interruption and extra expense. (SMF ¶¶ 28, 33.) Regent never supplemented its answers to interrogatories or its expert disclosures. And discovery closed on March 29, 2023. (D.E. 32.)

On March 20, 2023, Regent withdrew Mr. Smith (SMF ¶ 34,) so it cannot use him to supply evidence in this matter. And because it deferred entirely to him *only* for its alleged business interruption and extra expense damages through its interrogatory answers and expert disclosures, Regent cannot use any other "information or witness to supply evidence on a motion, at a hearing, or at a trial," regarding any alleged business interruption and extra expense damages. Fed. R. Civ. P 26(e), 37(c). Regent also withdrew the business interruption damages alleged in Mr. Smith's report. (SMF ¶ 35.) Because Regent has the burden of proving its alleged damages but cannot supply any evidence of any business interruption or extra expense damages, Affiliated FM is entitled to summary judgment as to Regent's alleged business interruption and extra expense damages.

> **2.** **Affiliated FM is entitled to summary judgment on Regent's claims for code upgrades because Regent admits it has never actually incurred them and because Regent cannot supply evidence on the issue.**

Affiliated FM is entitled to summary judgment on Regent's claims for code upgrades for two reasons. First, Regent cannot supply evidence on the issue because in its interrogatory answers and expert disclosures, Regent deferred entirely to Dennis James as its *only* expert regarding code upgrade damages it seeks in this lawsuit. But Regent never disclosed a written report of his opinions. Then, Regent abandoned him in its Rule 30(b)(6) designee's deposition. (SMF ¶ 32.)

---

behalf." *Urquilla-Diaz v. Kaplan Univ.*, 780 F.3d 1039, 1050 (11th Cir. 2015).

CASE NO.: 1:21-cv-23629-JLK

And then Mr. James failed to appear at his deposition. Second, the insurance policy only provides coverage for code upgrade costs if they are actually incurred within two years of the loss, but Regent admits it has still never incurred them even now, *five and a half years* after the loss.

> a. <u>Affiliated FM is entitled to summary judgment on Regent's claims for code upgrades because Regent admits it has never actually incurred them, so the insurance policy provides no coverage for them.</u>

Even if Regent could supply evidence of alleged code upgrade costs, the insurance policy provides no coverage for the code upgrades Regent alleges here because Regent never made any repairs related to any alleged code upgrades. (SMF ¶ 6.) Except through the insurance policy's Decontamination Costs and Demolition and Increased Cost of Construction coverages, the insurance policy excludes code upgrade costs:

> **Group III**: This Policy excludes:…
> 6. Loss from enforcement of any law or ordinance:
>    a) Regulating the construction, repair, replacement, use or removal, including debris removal, of any property; or
>    b) Requiring the demolition of any property, including the cost in removing its debris;
>
>    Except as provided by the Decontamination Costs and Demolition and Increased Cost of Construction coverages in this Policy.

(D.E. 5-1 at 20.) And the insurance policy's Decontamination Costs and Demolition and Increased Cost of Construction coverages could only provide coverage for code upgrade costs that Regent has actually "incurred" (D.E. 5-1 at 24) (the "maximum liability for this [Decontamination Costs and Demolition and Increased Cost of Construction] coverage in any one occurrence will not exceed the actual costs *incurred*….") (emphasis added), and then only if the property is "repaired, replaced or rebuilt on the same or another site within two years from the date or loss." (D.E. 5-1 at 48.) The insurance policy's valuation provision specifies that "Adjustment of the physical loss amount(s) under this Policy will be as of the date of loss at the place of loss… [and] "[o]n property

CASE NO.: 1:21-cv-23629-JLK

if not repaired, replaced or rebuilt on the same or another site within two years from the date of loss, unless such time is extended by the Company, the *actual cash value*." (D.E. 5-1 at 47-48.)[6]

Here, Regent admits it has not made any repairs that relate to any alleged code upgrades, *more than five and a half years after the loss* (SMF ¶ 6), and Regent never requested nor was granted any extension for such repair, replacement or rebuilding. (SMF ¶ 7.) Thus, Regent is not entitled to recover any claimed code upgrade costs. *Buckley Towers Condo., Inc. v. QBE Ins. Corp.*, 395 F. App'x 659, 665 (11th Cir. 2010) ("Buckley Towers is not entitled to law and ordinance damages because it never repaired the property and never actually incurred increased damages due to the enforcement of laws or ordinances") (citing *Ceballo v. Citizens Prop. Ins. Corp.*, 967 So. 2d 811, 815 (Fla. 2007) (holding that an insured was required by the insurance company to repair property and "incur[] an additional loss in order to recover" law and ordinance damages); *Citizens Prop. Ins. Corp. v. Ceballo*, 934 So. 2d 536, 538 (Fla. Dist. Ct. App. 2006) (same); *Md. Cas. Co. v. Knight*, 96 F.3d 1284, 1292 (9th Cir. 1996) (obligation to pay more than actual cash value could not be triggered under insurance policy because repairs were not made);

---

[6] Construction of an insurance policy, including the extent of coverage, is a question of law for the court. *Jones v. Utica Mut. Ins. Co.*, 463 So. 2d 1153, 1157 (Fla. 1985); *Montgomery v. Aetna Cas. & Sur. Co.*, 898 F.2d 1537, 1540 (11th Cir. 1990) (same) (applying Florida law); *Waller v. Truck Ins. Exch., Inc.*, 900 P.2d 619 (Cal. 1995). "[I]nsurance contracts must be construed in accordance with the plain language of the policy." *Taurus Holdings, Inc. v. U.S. Fid. & Guar. Co.*, 913 So. 2d 528, 532 (Fla. 2005) (citation omitted). Courts may not "rewrite contracts [or] add meaning that is not present." *Intervest Constr. Of Jax, Inc. v. Gen. Fid. Ins. Co.*, 133 So. 3d 494, 497 (Fla. 2014). "[I]f a policy provision is clear and unambiguous, it should be enforced according to its terms whether it is a basic policy provision or an exclusionary provision." *Taurus Holdings, Inc. v. U.S. Fid. & Guar. Co.*, 913 So. 2d 528, 532 (Fla. 2005); *In-N-Out Burgers v. Zurich Am. Ins. Co.*, No. 8:20-cv-010000, 2022 WL 472800, at *2 (C.D. Cal. Feb. 10, 2022) (insurance policies should be interpreted according to the "clear and explicit" meaning of the terms as used in their "ordinary and popular sense."). California law applies in this lawsuit (*see* D.E. 38 at 3-4,) but the Court need not decide the choice of law question on this motion because the outcome on the issues raised is the same under either California or Florida law. *See Ohio St. Troopers Ass'n, Inc. v. Point Blank Enters., Inc.*, No. 0:17-CV-62051-UU, 2018 WL 3109632, at *4 (S.D. Fla. Apr. 5, 2018); *Gevaerts v. TD Bank, NA*, 56 F. Supp. 3d 1335, 1339 (S.D. Fla. 2014).

CASE NO.: 1:21-cv-23629-JLK

*Renna v. Allstate Ins. Co.*, Civ. A. No. 92-20261, 1993 WL 404092, at *3 (N.D. Cal. Sept. 27, 1993); *Kahlig Enters., Inc. v. Affiliated FM Ins. Co.*, No. SA-20-CV-01091-XR, 2023 WL 1141876, at *4 (W.D. Tex. Jan. 30, 2023) ("Replacement cost benefits and code upgrade costs were not payable because [p]laintiff had not, to date, commenced repairs of the allegedly damaged properties at issue. The [p]olicy provides that the physical loss amount will the actual cash value ("ACV") if the properties are not repaired, replaced, or rebuilt within two years from the date of loss"). Thus, Affiliated FM is entitled to summary judgment as to any alleged code upgrade costs Regent may claim.

      b. <u>Affiliated FM is entitled to summary judgment on Regent's claims for code upgrades because Regent cannot supply evidence on the issue.</u>

Regent's answers to interrogatories state that all requested information about the damages it claims, including the amounts, nature, elements, method of calculation and documents supporting its damages, would come from its experts and expert reports. (SMF ¶ 27.) Regent then disclosed Mr. James as its *only* expert witness for code upgrades. (SMF ¶ 28.) But it only disclosed for him a series of photographs it called his "preliminary photograph report," that stated no dollar amount for alleged code upgrades, (SMF ¶ 30), and a promise it never fulfilled that it would provide his "report and/or estimate for the required code upgrades." (SMF ¶ 31.) Regent's disclosure says it would disclose his "report and/or estimate" in August 2022 (SMF ¶ 30,) but it did not do so by then, and still has not done so. (SMF ¶ 31.) Affiliated FM has separately moved to strike Mr. James for the inadequate disclosure and failure to appear at his deposition. (D.E. 49.) Regent never supplemented its answers to interrogatories or its expert disclosure for Mr. James or provided any expert disclosure for any other expert witness regarding claimed code upgrade damages. And discovery closed on March 29, 2023. (D.E. 32.) Also, *just one week before the end of discovery*, Regent's Rule 30(b)(6) designee testified the code upgrade amounts Regent seeks do

8

CASE NO.: 1:21-cv-23629-JLK

*not* come from Mr. James. (SMF ¶ 32.) And then Mr. James failed to appear at his deposition. (D.E. 49-7.) Thus, under Rule 37(c), as set forth in Affiliated FM's separate motion (D.E. 49,) he must be stricken, and Regent must be precluded from using any "information or witness to supply evidence on a motion, at a hearing, or at a trial," of alleged code upgrade damages. Fed. R. Civ. P 26(e), 37(c).

### 3. Affiliated FM is entitled to summary judgment on Regent's claims for business personal property damages because the insurance policy covers only actual cash value and Regent cannot supply evidence on the issue.

Affiliated FM is entitled to summary judgment on Regent's claims for business personal property damages for two reasons. First, the insurance policy only provides coverage for actual cash value of business personal property if the business personal property is not actually repaired, replaced, or rebuilt within two years of the loss. Importantly, Regent admits it has still never repaired, replaced, or rebuilt any of them even now, *five and a half years* after the loss. And Regent cannot establish actual cash value at trial because its expert report is limited to repair or replacement costs. Second, Regent cannot supply evidence on the issue because in its interrogatory answers and expert disclosures, Regent deferred entirely to David Abreu as its *only* expert regarding business personal property damages it seeks in this lawsuit. Mr. Abreu's report is inadequate and immaterial, and he failed to appear at his deposition.

### a. Affiliated FM is entitled to summary judgment on Regent's claims for business personal property damages because Regent admits it has never actually repaired, replaced, or rebuilt them, so the insurance policy provides only actual cash value for them, but Regent cannot establish the actual cash value or that Affiliated FM's payment for actual cash value was insufficient.

Even if Regent could supply evidence of alleged business personal property damages, the insurance policy provides no coverage beyond actual cash value for the business personal property damages Regent alleges here because Regent has not repaired, replaced, or rebuilt the business

9

CASE NO.: 1:21-cv-23629-JLK

personal property. (SMF ¶ 8.) The insurance policy's valuation provision specifies that "Adjustment of the physical loss amount(s) under this Policy will be as of the date of loss at the place of loss… [and] "[o]n property if not repaired, replaced or rebuilt on the same or another site within two years from the date of loss, unless such time is extended by the Company, the *actual cash value*." (D.E. 5-1 at 47-48.) Regent admits it has not repaired, replaced, or rebuilt the business personal property it claims was damaged, *more than five and a half years after the loss* (SMF ¶ 8), that it was paid an amount for actual cash value of its business personal property (SMF ¶ 9), and that it never requested nor was granted any extension to do the repairs, replacement, or rebuilding. (SMF ¶ 10.)

Regent never claimed that the amount Affiliated FM paid for business personal property was not actually, actual cash value. Instead, the report of Regent's expert, to which Regent deferred entirely as to its alleged damages for business personal property, is limited to repair or replacement costs. (D.E. 50-3, (providing only "RCV" amounts).) But Regent is not entitled to repair or replacement cost under the insurance policy because Regent failed to repair and/or replace the business personal property within two years as required by the insurance policy.

Affiliated FM did not breach the policy by paying actual cash value for Regent's business personal property; and because it only seeks repair or replacement costs for its allegedly damaged business personal property, Regent is not entitled to recover any business personal property damages. *CMR Constr. & Roofing, LLC v. Empire Indem. Ins. Co.*, 843 Fed. Appx. 189, 192-93 (11th Cir. 2021) (applying Florida law and affirming summary judgment in favor of insurer where claimant sought replacement cost value, policy provided that a claim for replacement cost value would not be paid "until the lost or damaged property is actually repaired or replaced" and "unless the repairs or replacement are made as soon as reasonably possible after the loss or damage," and

10

CASE NO.: 1:21-cv-23629-JLK

repairs had not been completed); *Predelus v. Atain Specialty Ins. Co.*, No. 21-CV-23382, 2023 WL 1331229, at *5-6 (S.D. Fla. Jan. 31, 2023) (insurer did not breach insurance policy because coverage is only for actual cash value where repair or replacement not made, and insured cannot establish actual cash value at trial because its expert report is limited to repair or replacement costs); *Knight*, 96 F.3d at 1292 (obligation to pay more than actual cash value could not be triggered under insurance policy because repairs were not made); *Renna*, 1993 WL 404092, at *3; *Kahlig Enters.*, 2023 WL 1141876, at *4 ("Replacement cost benefits… were not payable because [p]laintiff had not, to date, commenced repairs of the allegedly damaged properties at issue. The [p]olicy provides that the physical loss amount will the actual cash value ("ACV") if the properties are not repaired, replaced, or rebuilt within two years from the date of loss"). Thus, Affiliated FM is entitled to summary judgment on Regent's alleged business personal property damages claim.

    b. <u>Affiliated FM is also entitled to summary judgment on Regent's claims for business personal property because Regent cannot supply evidence on the issue.</u>

Regent's answers to interrogatories state that all requested information about the damages it claims, including the amounts, nature, elements, method of calculation and documents supporting its damages, would come from its experts and expert reports. (SMF ¶ 27.) Regent disclosed Mr. Abreu as its *only* expert witness for business personal property damages. (SMF ¶ 28.) Regent disclosed for him a list of items. (Ex. 3.) For some there is an "RCV" dollar amount, and as to those—in a column entitled "backups"—some name a website or a "po#," some are blank, and some say "See Backup," but neither the "po's" nor backup were included. Also, the list has no opinions on condition of any item prior to Hurricane Irma, whether the items were "damaged as a result of Hurricane Irma," or the "the facts or data considered by the witness in forming" such opinions. Thus, his report is inadequate and immaterial. *Predelus*,

11

CASE NO.: 1:21-cv-23629-JLK

2023 WL 1331229, at *5-6 (insurer entitled to summary judgment because coverage is only for actual cash value, and insured cannot establish actual cash value at trial because its expert report is limited to repair or replacement costs).

Regent never supplemented its answers to interrogatories or expert disclosure for Mr. Abreu or regarding business personal property damages. And discovery closed on March 29, 2023. (D.E. 32.) Mr. Abreu's report is inadequate and immaterial, and he failed to appear at his deposition. (D.E. 50, D.E. 50-3, D.E. 50-6.) Affiliated FM has separately moved to strike him. (D.E. 50.) Because Regent has the burden of proving its alleged damages but cannot supply any evidence of business personal property damages, Affiliated FM is entitled to summary judgment as to Regent's alleged business personal property damages.

### III. AFFILIATED FM IS ENTITLED TO SUMMARY JUDGMENT AS TO THE ALLEGED DAMAGES THAT REGENT CONCEALED UNTIL MARCH 22, 2023.

On March 22, 2023, just a week before the discovery deadline, Regent's Rule 30(b)(6) designee revealed at deposition that Regent had been concealing for several months its intent to seek damages at trial not disclosed in its answers to interrogatories or its expert disclosures, including based on documents it had concealed since August 2022, some of which it then produced during the deposition. Those concealed alleged damages are the subject of a motion to strike. (D.E. 51.) But even those concealed damages are not recoverable under the insurance policy as a matter of law.

#### A. Affiliated FM is entitled to summary judgment on Regent's concealed costs of its concealed contractor because actual cash value is the appropriate measure under the policy, not repair or replacement costs.

A week before the discovery deadline, Regent's designee announced Regent intends to seek at trial to recover alleged cost amounts stated in a contract it signed on August 22, 2022 with Knight Commercial ("Knight"). (SMF ¶ 12.) Regent admits it concealed *everything* about Knight

CASE NO.: 1:21-cv-23629-JLK

for at least seven more months and the alleged Knight repair, replacement or rebuild costs, until March 22, 2023 (SMF ¶ 12), despite its obligations under Rule 26(a) to supplement its Rule 26(a)(1)(A) disclosures, answers to interrogatories, responses to requests for production, and production of documents. Fed. R. Civ. P. 26(e). Regent's concealment is the subject of a motion to strike. (D.E. 51.) But even ignoring Regent's concealment, Regent admits it never made the Knight repairs, replacement or rebuild, *five and a half years after the date of loss*. (SMF ¶ 13). Thus, the Knight evidence does not support damages that are recoverable under the insurance policy. Rather, for damages to property that not "repaired, replaced or rebuilt on the same or another site within two years from the date of loss," the insurance policy provides for *actual cash value* as of the date of loss *not* costs of repair, replacement, or rebuild. (D.E. 5-1 at 48.) The insurance policy provides:

> **L. VALUATION**
>
> Adjustment of the physical loss amount(s) under this Policy will be as of the date of loss at the place of loss, and for no more than the interest of the Insured.
>
> 13. On property if not repaired, replaced or rebuilt on the same or another site within two years from the date of loss, unless such time is extended by the Company, the actual cash value.

(D.E. 5-1 at 48.) And because the Knight contract costs that Regent concealed for at least seven months prior to the week before the end of discovery are for current repair, replacement or rebuild, they do not supply evidence of recoverable damages, do not support any breach by Affiliated FM, and cannot defeat summary judgment. *CMR Constr. & Roofing*, 843 Fed. Appx. at 192-93 (affirming summary judgment for insurer where claimant sought replacement cost value, which was incorrect measure under insurance policy because repairs had not been completed); *Predelus*, 2023 WL 1331229, at *5-6 (insurer entitled to summary judgment because coverage is only for actual cash value where repair or replacement not made, and insured cannot establish actual cash

CASE NO.: 1:21-cv-23629-JLK

value at trial because it disclosed no expert report for that); *Porben v. Atain Specialty Ins. Co.*, 546 F. Supp. 3d 1325, 1332 (S.D. Fla. 2021) (barring introduction of replacement costs where the measure of recoverable damages in insurance policy was actual cash value on the dates of loss because the property had not been repaired or replaced); *Knight*, 96 F.3d at 1292 (no obligation to pay more than actual cash value could be triggered under insurance policy because repairs were not made). Thus, Affiliated FM is entitled to judgment as a matter of law with respect to these alleged costs, even if they had not been improperly concealed by Regent.

> **B.** **Affiliated FM is entitled to summary judgment on Regent's concealed "permit fees" because Regent has not incurred them, and actual cash value is the appropriate measure under the insurance policy.**

At the March 22, 2023 deposition, Regent announced it intends to seek $29,000 for "Permit Fees," that it has not incurred, an amount Regent's owner says is an estimate (SMF ¶ 15), the construction company Regent had concealed for at least seven months. (SMF ¶¶ 11-12.) Regent's concealment is the subject of a motion to strike. (D.E. 51.) It appears Regent claims those fees would be incurred for repair, replacement or rebuild by Knight if Regent commended a repair, replacement or rebuild. (SMF ¶¶ 13, 15.) But, just as with respect to the Knight current repair, replacement or rebuild costs Regent concealed for seven months until March 22, 2023, the insurance policy covers *actual cash value* of the property as of the date of loss. (D.E. 5-1 at 48.) And Regent's hearsay assertion of permit fee cost amounts does not supply evidence of recoverable damages and cannot defeat summary judgment. *CMR Constr. & Roofing*, 843 Fed. Appx. at 192-93 (affirming summary judgment in favor of insurer where policy provided claim for replacement cost value would not be paid "until the lost or damaged property is actually repaired or replaced" and and repairs had not been completed); *Predelus*, 2023 WL 1331229, at *5-6 (insurer entitled to summary judgment because coverage is only for actual cash value where repair or replacement not made, and insured cannot establish actual cash value at trial because it

14

disclosed no expert report for that); *Porben*, 546 F. Supp. 3d at 1332 (barring introduction of replacement costs where the measure of recoverable damages in insurance policy was actual cash value on the dates of loss because the property had not been repaired or replaced); *Knight*, 96 F.3d at 1292 (no obligation to pay more than actual cash value could be triggered under insurance policy because repairs were not made). Thus, Affiliated FM is entitled to judgment as a matter of law with respect to these alleged costs, even if they had not been improperly concealed by Regent.

    **C.**     **Affiliated FM is entitled to summary judgment on Regent's concealed claim for extra expense of an alternative location that it never leased because those expenses were never incurred.**

The only extra expense claim Regent disclosed in its answers to interrogatories regarding damages and the expert reports to which it deferred are the $5,288 of storage container costs, as discussed in section C, above. One week before the discovery deadline, Regent's Rule 30(b)(6) designee testified that Regent now intends to also claim at trial $254,227.50 for a one-year lease of an alternative location that it never actually leased. (SMF ¶ 17.) Regent's concealment is the subject of a motion to strike. (D.E. 51.) Even if Regent had not concealed this claim for extra expense, Affiliated FM would still be entitled to summary judgment because the insurance policy does not cover extra expenses that Regent did not actually *incur*. D.E. 5-1 at 35.) ("The recoverable Extra Expense loss is the reasonable and necessary extra expense *incurred* by the Insured of the following during the Period of Liability….") (emphasis added). And Regent admits it did not actually incur these expenses. (SMF ¶ 18.) Thus, Affiliated FM is still entitled to summary judgment as to these concealed alleged costs.

CASE NO.: 1:21-cv-23629-JLK

> **D. Affiliated FM is entitled to summary judgment on Regent's concealed claim for extra expense for storage containers because it is based on amounts in concealed documents and exceeds the time period stated in its disclosed expert's report.**

Through its June 2022 interrogatory answers and July 15, 2022 expert disclosures, Regent deferred entirely to Bruce Smith as to extra expense damages. His report states that Regent's extra expense damages were storage container costs through March 2018, which totaled $5,288 based on his summary of concealed invoices. His report states that the time period applicable to Regent's extra expense coverage ended on March 8, 2018:

> **V. ANALYSIS OF BUSINESS INTERRUPTION LOSS AND EXTRA EXPENSE - SPETEMBER 10, 2017 THROUGH MARCH 8, 2018 (180 DAYS):**
>
> **Loss Measurement Period:**
>
> Based on my review of RAC's financial records, its lost profit due to Hurricane damage continued beyond March 8, 2018. However, due to RAC's 180 Ordinary Payroll Limit, as reflected in its Business Interruption coverage, the "covered" Business Interruption loss and Extra Expense ended on March 8, 2018.

(SMF ¶ 33.) Under the Rules, because Regent deferred entirely to its expert report through its interrogatory answers and expert disclosure that it never supplemented or corrected, Regent cannot now claim more than $5,288 for storage container costs.

But that's exactly what Regent is trying to do. On March 20, 2023, Regent withdrew Mr. Smith. Then, at its March 22, 2023 deposition, Regent announced it was also withdrawing the extra expenses asserted in Mr. Smith's expert report (of $5,288), and, instead, intends to seek $56,823.19 or more for storage containers. (SMF ¶ 16.) Regent's concealment is the subject of a motion to strike. (D.E. 51.) Regent's designee testified the amounts are based on a summation of invoice documents he says are still in Regent's possession, but he admits Regent continues to conceal the documents. (SMF ¶ 16.) Even if Regent had timely disclosed these damages which it belatedly seeks to recover, its testimony, unsupported by the alleged invoices comprising the amounts, which it continues to conceal, is inadmissible under the Rules of Evidence. Fed. R. Evid.

CASE NO.: 1:21-cv-23629-JLK

1001-04, 1008; 2 McCormick On Evid. § 231 (8th ed.) ("The rule is this: in proving the content of a writing,… where the terms of the content are material to the case, the original document must be produced unless it is shown to be unavailable for some reason other than the serious fault of the proponent, or unless secondary evidence is otherwise permitted by rule or statute.").

>   E.  **Affiliated FM is entitled to summary judgment on Regent's concealed claim for rents because that is not the measure of recoverable amounts under the insurance policy.**

At its March 22, 2023 deposition, Regent's Rule 30(b)(6) designee announced it intends to seek at trial completely different business interruption damages from those previously disclosed, and now withdrawn. Now, Regent intends to claim rents from September 10, 2017 through at least December 2022, for which it produced for the first time—during the deposition—an Excel spreadsheet summation of rents. (SMF ¶ 19.) But summation of "rents" is not a measure of recoverable amounts under the insurance policy.

The Business Interruption Coverage of the insurance policy provides coverage for "Gross Earnings" for "the actual loss sustained by the Insured of Gross Earnings, less all charges and expenses that do not necessarily continue, plus all other earnings derived from the operations of the business, excluding loss covered under Rental Income, during the Period of Liability." (D.E. 5-1 at 33.) The Business Interruption Coverage of the insurance policy provides coverage for "Gross Profits" for "the actual loss sustained by the Insured of the: a) Reduction in Sales; and the b) Increased Cost of Doing Business, Resulting from the necessary interruption of business during the Period of Liability." (D.E. 5-1 at 33.) Regent admitted its last sales from its Miami location were in 2016, long before Hurricane Irma in September 2017. (SMF ¶ 23.) Therefore, Regent suffered no loss covered as "Gross Profits." The Business Interruption Coverage of the insurance policy relating to Rental Income, even if applicable, requires application of a formula that removes "charges and expenses that do not continue," and is limited in time to the "Period of

Liability." (D.E. 5-1 at 35.) Thus, a summation of rent amounts as Regent now intends to claim is not a measure of amounts recoverable under the insurance policy.

Also, Regent's previously disclosed, but now withdrawn, business interruption expert Mr. Smith, determined the business interruption period ended on March 8, 2018—contrary to Regent's concealed-until-a-week-before-the-end-of-discovery, current intent to claim rents through at least December 2022:

> V. **ANALYSIS OF BUSINESS INTERRUPTION LOSS AND EXTRA EXPENSE - SPETEMBER 10, 2017 THROUGH MARCH 8, 2018 (180 DAYS):**
>
> **Loss Measurement Period:**
>
> Based on my review of RAC's financial records, its lost profit due to Hurricane damage continued beyond March 8, 2018. However, due to RAC's 180 Ordinary Payroll Limit, as reflected in its Business Interruption coverage, the "covered" Business Interruption loss and Extra Expense ended on March 8, 2018.

(SMF ¶ 33.)[7] Regent's concealment is the subject of a motion to strike. (D.E. 51.)

And because a summation of "rents" is not a measure of loss recoverable under the insurance policy, Regent's testimony of a summation of rents is irrelevant and inadmissible, and does not preclude summary judgment. *See Porben*, 546 F. Supp. 3d at 1332 (barring introduction of alleged costs where that was not the measure of recoverable damages in insurance policy). In addition, calculation of business interruption damages and determination of the period of liability under the insurance policy are subjects for an expert witness. But Regent withdrew its business interruption expert. And Regent's concealment of what it would claim until a week before the end of discovery, would defeat the purpose of the Rule 26(e) expert witness disclosure "to safeguard against surprise." *Warren*, 2014 WL 3764126, at *1 (citation omitted). But even if these concealed

---

[7] It appears Regent withdrew Mr. Smith because his conclusion that Regent suffered any business interruption was incorrect, including because he failed to consider Regent's financial information for the Miami location, including that its last sales at the Miami location were in 2016, long before Hurricane Irma on September 10, 2017. (*See* SMF ¶ 23.)

CASE NO.: 1:21-cv-23629-JLK

damages are not stricken, Affiliated FM is entitled to summary judgment, because a summation of "rents" is not a measure of loss recoverable under the plain language of the insurance policy and law.

> F. **<u>Affiliated FM is entitled to summary judgment on Regent's concealed claim for alleged professional fees because it is based on amounts in concealed documents.</u>**

At its March 22, 2023 deposition, Regent's designee announced for the first time it intends to seek $19,818.75 for "Professional Fees," for a business interruption claim preparation firm (SMF ¶ 25), although it admitted it never presented any business interruption damages to Affiliated FM as part of its Hurricane Irma claim. (SMF ¶ 20.) In addition, no such type or amounts of alleged damages are included in any of Regent's expert reports, to which Regent deferred for all its damages. (SMF ¶ 25.) On March 20, 2022, Regent withdrew its business interruption expert. (SMF ¶ 34.) And at deposition, Regent announced that it is *not* seeking business interruption damages of the type presented in the business interruption expert report it had disclosed on July 15, 2022. (SMF ¶ 35.)

Regent's designee also admitted the concealed amounts it now seeks are based on a summary of amounts in invoices it continues to conceal. (SMF ¶ 25.). Regent's concealment of this information is the subject of a motion to strike. (D.E. 51.) And Regent's bare testimony, unsupported by the purported invoices, is inadmissible to demonstrate these fees are recoverable under the policy. Fed. R. Evid. 1001-04, 1008; 2 McCormick On Evid. § 231. Thus, Affiliated FM is entitled to summary judgment on these alleged costs.

WHEREFORE Defendant Affiliated FM Insurance Company respectfully requests this Court grant summary judgment against Plaintiff Regent Aerospace Corporation on the damages Regent claims in this lawsuit, both with respect to the damages Regent claimed in its discovery

CASE NO.: 1:21-cv-23629-JLK

responses and Rule 26 disclosures, and the damages Regent concealed until a week before the discovery deadline, and such further relief for Defendant the Court deems just and proper.

          Respectfully submitted,

          LAPIN & LEICHTLING, LLP
          *Counsel for Defendant Affiliated FM Insurance Company*
          255 Alhambra Circle, Suite 600
          Coral Gables, Florida 33134
          Telephone No.: (305) 569-4100

          By:    s/ Adam B. Leichtling
                 ADAM B. LEICHTLING
                 Florida Bar No. 984175
                 ALeichtling@LL-lawfirm.com
                 eservice@LL-lawfirm.com