**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No.: 1:21-cv-23629-JLK**

REGENT AEROSPACE CORPORATION,

      Plaintiff,

vs.

AFFILIATED FM INSURANCE COMPANY

      Defendant.

_____/

**PLAINTIFF, REGENT AEROSPACE CORPORATION'S,**
**MOTION FOR PARTIAL SUMMARY JUDGMENT**

Plaintiff, REGENT AEROSPACE CORPORATION, (hereinafter: **"Regent"**), by and through the undersigned counsel and pursuant to Federal Rule of Civil Procedure 56, and Local Rule 56.1, hereby moves this Court for entry of a partial summary judgment in favor of Regent and against Defendant, AFFILIATED FM INSURANCE COMPANY (hereinafter: **"Affiliated FM" or "Insurance Company"**), and in support thereof states:

**INTRODUCTION AND BACKGROUND[1]**

This action involves a first party claim for benefits under a property insurance policy of insurance issued by Defendant, Affiliated FM Insurance Company, to Plaintiff, Regent Aerospace Corporation, bearing policy number SX432, for the policy period of October 16, 2016, to October 16, 2017, (the **"Policy"**). *See*, Plaintiff's Statement of Material Facts in Support of Plaintiff's Motion for Summary Judgment (hereinafter: **"SOMF"**) at **¶ 1.**

---

[1] The facts are based on the Statement of Material Facts being filed concurrently with the Motion.

1

The Policy provides for indemnity for commercial building damages located at 2929 Northwest 73rd Street, Miami, Florida 33147, (the **"Property"**). [**SOMF ¶1**] The claim involves a loss of business real property, personal property, business interruption loss, and extra expenses as a result of Hurricane Irma, which occurred on or about September 10, 2017. [**SOMF ¶3, ¶5 and ¶7**] The claim was timely reported in accordance with the terms and conditions of the Policy, on or about September 21, 2017, and Plaintiff also immediately began to mitigate their damages. [**SOMF ¶4, ¶9, ¶10 and ¶16**]

The Insurance Company issued five (5) total payments to Regent between December 12, 2017 through October 26, 2020, totaling $1,188,201.01 after application of a deductible of $218,450.00. This payment includes $19,250.00 for personal property damage. [**SOMF ¶5, ¶7, ¶8, ¶13, ¶14, ¶21, ¶22, ¶35, ¶36, ¶37 and ¶45**]

In this case there is the undisputed fact that Defendant acknowledged coverage for the subject claim, made multiple payments toward the claim.[**SOMF ¶5**]

On or about July 27, 2018 Plaintiff provided the Defendant with the presentation of costs for Extra Expenses to allow the Plaintiff to relocate to another location while repairs were underway at the Property, including the Extra Expense of a one (1) year lease and associated costs with certification by the FAA as a new repair station location. [**SOMF ¶23 and ¶31**]

The Insurance Company was provided the Lease on September 17, 2018 for the Plaintiff to rent out a property located at 2275 E 11th Ave., Hialeah, FL 33013 while the repairs to the Subject Property were to be performed. The annual rent for the first twelve (12) months of the lease was $254,227.50. [**SOMF ¶29**]

In turn, the Insurance Company sent correspondence to Plaintiff on September 21, 2018, advising that in regard to the lease of the property at 2275 E 11th Ave., Hialeah, FL 33013 the Insurance Company finds it to be a comparable location and that once the lease is executed and

payments made, it will execute payment for the amount supported. **[SOMF ¶30]**

The Insurance Company failed to address the Plaintiff's request for the costs associated with the relocation to 2275 E 11th Ave., Hialeah, FL 33013, including the costs for the certification by the FAA, costs to move production equipment to the new facility, and setup costs for production at the temporary facility as requested in the July 27, 2018 email. **[SOMF ¶23, ¶31]**

This failure of the Insurance Company to agree to these necessary costs addressed above frustrated and prevented the Plaintiff from formally executing the Lease. **[SOMF ¶32]**

On March 28, 2019, the Insurance Company sent correspondence advising it was closing its file and would submit a payment of $19,250.00 to address the actual cash value of the personal property damage. **[SOMF ¶37]**

Reza Soltanian has also provided testimony regarding the condition of the property (roof, etc.) and the applicable building codes required by the Miami-Dade Building Department along with a Proposal for Code Upgrades which were provided to Defendant on or about March 13, 2020.  To date, defendant has refused to pay these costs. **[SOMF ¶38, ¶39, ¶40, ¶42, ¶43, ¶44 and ¶46]**

On April 29, 2020, the Plaintiff sent an email to the Insurance Company advising that the process is taking too long and requested an update regarding the payment for costs as per the worksheet provided as well as the additional costs from Phoenix Construction Associates related to code compliance. **[SOMF ¶38]**

On May 29, 2020, the Insurance Company sent correspondence advising they will not consider the code upgrades claimed by Phoenix Construction Associates due to it being past the two (2) year-period.  **[SOMF ¶42]**

On June 26, 2020, the Plaintiff sent an email to the Insurance Company advising it was in

complete disagreement with the Insurance Company's assessment and position on the case. The email went on further to state that much of the project delay was due to the unacceptable length of time it took for the Insurance Company to accept the contractor's proposal. In addition, the email states that the Insurance Company deceived the Plaintiff into trying to complete a long-term reconstruction project that had no chance of completion within two (2) years and that the Insurance Company had always represented that the costs associated with code changes were a covered item. **[SOMF ¶43]**

To date, the Insurance Company has refused to pay for the code upgrades or any other additional costs. The Insurance Company owes at least $78,300 for the code upgrades to be in compliance with Ordinance and Law costs; and the Insurance Company owes at least $254,227.50 for leasing the new location. **[SOMF ¶44, ¶45 and ¶46]**

As Plaintiff disagrees with the amount of coverage monies issued by Defendant, on June 30, 2021, Regent filed this lawsuit against the Insurance Company in state court seeking additional payment under the Policy, which was then transferred to federal court on October 15, 2021. **[D.E. 1]**

Plaintiff is entitled to full coverage and proper payment under the Policy. As part of that full coverage and proper payment under the Policy, Plaintiff now brings forth this instant Motion for 1) a holding on the applicable Choice of Law analysis, 2) a holding on the inevitable and required Ordinance and Law costs associated with bringing the Property back to its pre-loss condition with respect to code upgrades, as well as 3) a holding on the costs associated with the lease to enter a new property site and relocate to continue business as the insured Property is in a condition of disrepair that doesn't allow for business to continue until the Defendant tenders full payment to bring the Property back to its pre-loss condition.

## MEMORANDUM OF LAW

### I.      SUMMARY JUDGMENT STANDARD

Summary judgment may only be entered only where there is no genuine issue of material fact. *Twiss v. Kury*, 25 F. 3d 1551, 1554 (11th Cir. 1994). The moving party has the burden of meeting this exacting standard. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). Moreover, "[a] party must support its assertion that there is no genuine issue of material fact by 'citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations…admissions, interrogatory answers, or other materials". *Ritchey v. S. Nuclear Operating Co.*, 423 Fed. App'x. 955, 956-57 (11th Cir. 2011) (quoting Fed. R. Civ. P. 56(c)(1)).

"An issue of fact is 'material' if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case." *Allen v. Tyson Foods, Inc.*, 121 F. 3d 642, 646 (11th Cir. 1997). An issue of fact "is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." Id. In applying this standard, district courts should view the evidence and all factual inferences therefrom in the light most favorable to the party opposing the motion. *Id*.

### II.      PROPERTY INSURANCE POLICY INTERPRETATION

Plaintiff's policy of insurance governs coverage of the loss. This Court must note that the Policy is an "all-risk" policy, which provides coverage for all losses not resulting from misconduct or fraud unless the policy contains a specific provision expressly excluding the loss from coverage. *Mejia v. Citizens Prop. Ins. Corp.*, 161 So. 3d 576, 578 (Fla. 4th DCA 2014); *Hudson v. Prudential Prop. & Cas. Ins. Co.*, 450 So. 2d 565, 568 (Fla. 2d DCA 1984) (contrasting an all-risks policy from a specific peril policy which insures only against named risks). "All-risk" is "given a broad and comprehensive meaning." *Wallach v. Rosenberg*, 527 So. 2d 1386, 1388

(Fla. 3d DCA 1988). Defendant faces a heavy burden to prove that there is no coverage based on an exclusion.

To the extent that any part of Plaintiff's Motion turns on the Court's interpretation of the Policy, it is well-settled law in Florida that exclusionary clauses are construed more strictly than coverage clauses, *Demshar v. AAACon Auto Transport, Inc.*, 337 So. 2d 963, 965 (Fla. 1976). Thus, the insurer's burden is even heavier under an all-risk policy. *Id*. at 1389. Exclusionary clauses that are uncertain in meaning are construed in favor of the insured. *Id*.  Exclusionary clauses are strictly construed in a manner that affords the broadest possible coverage to an insured. *Triano v. State Farm Mut. Auto. Ins. Co.*, 565 So. 2d 748 (Fla. 3d DCA 1990).

Courts must construe first-party insurance policies in a reasonable, practical, sensible, and just manner. *First Profs. Ins. Co., Inc. v. McKinner*, 973 So. 2d 510, 514 (Fla. 1st DCA 2008). Absent ambiguity, the court must give full effect to terms of the policy through their plain meaning. *Arias v. Affirmative Ins. Co.*, 944 So. 2d 1195, 1197 (Fla. 4th DCA 2006). Where an ambiguity does exist, such must be construed against the insurer and in favor of the insured. *Triano v. State Farm Mut. Auto. Ins. Co.*, 565 So. 2d 748 (Fla. 3d DCA 1990).

"Florida law does not allow insurers to use obscure terms to defeat the purpose for which a policy is purchased." *Purelli v. State Farm Fire & Cas. Co.*, 698 So. 2d 618, 620 (Fla. 2d DCA 1997) (citing *Weldon v. All American Life Ins. Co.*, 605 So. 2d 911, 915 (Fla. 2d DCA 1992) (internal citations omitted)). Therefore, insurance policies "will not be construed to reach an absurd result." *Deni Assocs. of Fla., Inc. v. State Farm Fire & Cas. Ins. Co.*, 711 So. 2d 1135, 1140 (Fla. 1998).

III.   **CHOICE OF LAW**

In filing this Motion, Regent argues that as this matter is in federal court after being moved due to diversity of citizenship between the parties, that this matter and all future proceedings moving forward should follow the State of Florida's substantive law and no other states law.

Plaintiff files this Motion after filing a previous motion to compel appraisal and attending hearing on same on February 2, 2023, where amongst other issues in that motion arose a choice of law conflict between the parties. **[D.E. 33]** However, at such hearing on February 2, 2023 in front of Senior Judge James Lawrence King, this Court was able to make a ruling on Plaintiff's motion to compel appraisal, while hearing arguments on choice of law, not needing to reach a decision on that hearing as to the choice of law conflict that arose. **[D.E. 42]**

A.        **Selecting the Proper Choice of Law Analysis Rule**

When a court exercises jurisdiction based on diversity of citizenship, 28 U.S.C. § 1332, a federal court must apply the choice of law rules of the forum state to determine which substantive law governs the action. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941). This diversity action was commenced in Florida. This Court now must determine which state's substantive law the Florida Supreme Court would choose to govern interpretation of the Affiliated FM Policy, as it is "bound to decide the case the way it appears the state's highest court would." *Shapiro v. Associated Int'l Ins. Co.*, 899 F.2d 1116, 1118 (11th Cir.1990).

Lastly, with respect to this Section, based upon arguments made at the prior hearing the parties are in agreement that the choice of law analysis selection that is used to analyze and evaluate this choice of law conflict is Florida Law as per *LaFarge Corp. v. Travelers Indem. Co.*, 118 F.3d 1511 (11th Cir. 1997), which states a federal court sitting in diversity must apply choice of law rules of the forum state. *Id*. at 1515.

B.        **The Appropriate Substantive Law to be Applied in this Instant Matter is the**

**State of Florida**

As per *Commodore Plaza Condo. Ass'n, Inc. v. Evanston Ins. Co.*, No. 21-CV-24328, 2022 WL 3139106, (S.D. Fla. Aug. 5, 2022), a 2022 Southern District of Florida case, and other case law cited below, Florida law is the proper law to be applied to this dispute over all future issues concerning this matter.  Specifically, binding Eleventh Circuit precedent requires departure from *lex loci contractus* in insurance disputes related to real property located in Florida. *Id*. at 2.

It is Plaintiff's position that after applying the forum state (Florida) choice of law rules, the proper law to apply to this dispute over this matter is Florida law. It is specifically *Commodore Plaza*, which holds that the outdated concept of *lex loci contractus* does not apply to real property insurance policy claims, unlike other auto insurance policy claims and life insurance policy claims. *Id*.

The Plaintiff anticipates that Defendant will argue that California law applies here, as they argued such in their opposition **[D.E. 38]** to Plaintiff's motion to compel appraisal. **[D.E. 33]**

However, Defendant in their opposition, missed this issue by citing to older case law that has since been settled and codified after years of inconsistent decisions which have been in dispute with one another.

As to whether Florida or California law applies, Eleventh Circuit precedent makes clear that Florida law applies because the dispute involves a contract insuring immovable, real property in Florida, as well as the fact that the damage at issue in this matter occurred in Florida.

Furthermore, it is without question that Florida courts have an interest in the outcome and litigation of Florida disputes, here being a real property insurance dispute over, including but not limited to a Hurricane Irma Claim (a claim of which California substantive law has little to no precent case law concerning; as Hurricane Irma is a weather event that is completely unique and limited to the east coast, specifically the state of Florida). Plaintiff also notes that the subject Policy

at issue here covers properties in multiple states including Indiana. Just as California law has little to no decisions from their courts on the subject of hurricanes, similarly, California would have little to no case law on deadly and violent tornadoes, compared with Indiana. Thus, the "common sense" argument, which is made in *Am. Home Assurance Co. v. Peninsula II Devs., Inc.*, No. 09-23691-CIV, 2010 WL 11451835, at 6 (S.D. Fla. Oct. 19, 2010) as well, is that the substantive law controlling a real property dispute should be based on the situs of the property.

In deciding that Florida substantive law applies here, and in reviewing the *Commodore Plaza* case and its progenitors, it is clear that the outdated concept of *lex loci contractus*, an antiquated choice-of-law rule, does not apply here in a real property dispute.

After multiple inconsistent and conflicting decisions the 2022 United States District Court, S.D. Florida, opinion of *Commodore Plaza* has settled the inconsistencies once and for all by stating "…in this real-property insurance damage case, *lex loci contractus* does not apply because the real property is located in Florida." *Id.* at 3.

The reasoning expressed in *Commodore Plaza* for such, as eluded to above, and in citing to both *Shapiro v. Associated Int'l Ins. Co.*, 899 F.2d 1116 (11th Cir. 1990) and *Sturiano v. Brooks*, 523 So. 2d 1126, 1129 (Fla. 1988), *Commodore Plaza* stated in refencing *Shaprio*, "It reasoned that while *lex loci contractus* was appropriate in the context of automobile insurance – where the insured property could easily move from state to state, thus causing uncertainty as to which state's law governed the policy, *see Sturiano v. Brooks*, 523 So. 2d 1126, 1129 (Fla. 1988) – 'it is equally true that real property remains stationary and immobile,' thus eliminating any such uncertainty." *Shaprio* at 1119.

*Commodore Plaza* went on further to state, "*Shapiro* noted that while *Sturiano* – a case <u>explicitly</u> limited to automobile insurance contracts – expressed concerns about the validity, bindingness, and stability of automobile insurance contracts if *lex loci contractus* was not applied,

9

those concerns are not present in a real-property insurance claim. *Shapiro*, therefore, held that Florida law should apply, as the location of insured real property is permanent, unlike an automobile. *Commodore Plaza* at 3.

That exception as the courts have stated, is not only supported by the cited case law, but "common sense" as well. *Am. Home Assurance Co.* at 6.

In this instant action, the exception to the *lex loci contractus* concept is applicable here because no such transitory concern exists with respect to contracts insuring immovable real property.

In addition to the above case law, Plaintiff also directs the Court's attention to the very first page of the subject Policy **[D.E. 5-1]**, which states in capital red letters: "Florida Information: "THIS POLICY CONTAINS A SEPARATE DEDUCTIBLE FOR HURRICANE LOSSES…" This observational fact only adds weight to Plaintiff's argument that the controlling substantive law over a policy dispute should be that of the situs of the Property which is further evidenced here by the Defendant's thought process or intent when they included a disclaimer on the first page of the Policy speaking about a Florida specific provision relating to hurricane coverage.

Thus, it is now settled under *Commodore Plaza* and the companion cases it cites to within that decision, that the appropriate choice of law to apply to disputes under real property insurance claims has dispelled the antiquated and outdated concept of *lex loci contractus*, and it is now clear and without question that the situs of the actual property, here being the state of Florida, is the controlling substantive law for disputes arising under the real property insurance policy.

Therefore, Defendant's argument that Plaintiff anticipates, that California law should apply because the insurance policy concerning this matter was issued to the State of California cannot successfully be argued on those merits after these more recent cases have held the appropriate

substantive law to apply in a real property insurance dispute is the state in which the real property sits—in this suit being the State of Florida.

Additional cases argued by Defendant at the hearing on Plaintiff's motion to compel appraisal, such as *U.S. Fid. & Guar. Co. v. Liberty Surplus Ins. Corp.*, 550 F.3d 1031, (11th Cir. 2008), *Liberty Mut. Ins. Co. v. Festival Fun Parks, LLC*, No. 12-62212-CIV, 2013 WL 4496511, (S.D. Fla. Aug. 22, 2013), and the matter of *Am. Home Assurance Co. v. Peninsula II Devs., Inc.*, No. 09-23691-CIV, 2010 WL 11451835, (S.D. Fla. Oct. 19, 2010), are all clearly distinguishable from Plaintiff's case cited to above, *Commodore Plaza,* as *Commodore Plaza* is entirely and properly controlling here as it is the more recent case, and is directly on point in terms of facts, in addition to it being from this instant Court, the Southern District of Florida.

As per the above case law, the applicable choice of law to this matter is Florida law and not California law. As such, Plaintiff asks this Honorable Court to grant partial summary judgment in their favor as to the applicability of Florida law in this matter.

## IV.   DEFENDANT BREACHED THE POLICY BY FAILING TO PAY THE FACE VALUE OF PHEONIX CONSTRUCTION ASSOCIATIONS PROPOSAL

The Insurance Company needs to answer how exactly they were treating this Policy because their response is critical.  Fundamentally, there are two types of insurance policies: indemnity policies and repair policies.  Instead of operating this Policy as an indemnity policy and paying the undisputed amount owed, the Insurance Company at the initial stage of this process treated this as a quasi-repair action and thus a repair policy.

It is an incontrovertible fact the Insurance Company failed to pay the undisputed amount of the damages.  It is also incontrovertible that the Insurance Company interjected itself into negotiations with the Plaintiff's contractors by conferring with them in and attempt to bargain over the price and scope of the proposals and estimates provided by the contractors to the Defendant

via the Plaintiff.  Essentially the Defendant here was forcing the Plaintiff to have their contractors negotiate directly with the Insurance Company in order to debate the cost of repairs and ultimately the payments to be tendered related to the loss. In fact, this unconventional and frustrating process by the Defendant in attempting to thwart Plaintiff's contactors from preserving their initial estimates and proposals made in those contractor's expertise forced the Plaintiff's initial contractor, TGSV Enterprises, to advise the Plaintiff they could no longer work on the project. **[SOMF ¶26]**

Later, after the Insurance Company finally agreed with the face amount of Plaintiff's second contractor, Phoenix Construction's Associates, Proposal of $770,028.00, the Insurance Company decided to pay only the actual cash value (ACV) amount of $672,179.55 in withholding the depreciation amount of $99,848.45. *See*, Exhibit 21 of Exhibit "B" of the SOMF.

This payment was a breach of the contract because the Insurance Company should have paid the full amount of Phoenix Construction's Associates Proposal and the Insurance Company had no right under Florida Law nor the Policy in holding the remainder of the ACV until the "contract milestone payments are supported" as stated in Exhibit 21 of Exhibit "B" of the SOMF.

In determining when and what the Insurance Company must pay, you must first look to Florida Statues.  However, there is no Florida Statute governing how payments are made under a commercial policy, unlike homeowner's policies.  Next, you must turn to common law and again there are no cases directly on point as to how these payments are to be tendered.

Therefore, the court is only left with looking at the actual Policy which was drafted by the Insurance Company and which is silent as to whether it is required to pay replacement cost value or actual cash value and when. **[SOMF ¶2]**

The Defendant was required to pay the full amount of Phoenix Construction Associates Proposal and had no authority under Florida Statute, Florida Case law, nor the Policy to remove

the depreciation amount. Thus, the Defendant by the above actions failed to fully indemnify the Plaintiff for the loss putting into question which type of policy the Defendant is treating the Subject Policy.

### V.   PLAINTIFF HAS INCURRED THE INCREASED EXPENSE OF ORDINANCE AND LAW COSTS TO REPAIR THE PROPERTY BACK TO ITS PRE-LOSS CONDITION

#### A.   Definition of Ordinance and Law Damages

Under FL. Stat. § 627.7011(1)(b), the law and ordinance coverage under an insurance policy for a dwelling provides reimbursement for up to 25% of dwelling policy limits for increased repairs and replacement costs incurred by the insured to comply with requirements of the applicable laws and ordinances regulating construction or repair of property.

Under FL. Stat. § 627.7011(3)(a), the law and ordinance coverage under an insurance policy, the insurer must initially pay at least the actual cash value (ACV) of the insured loss, less any applicable deductible.

The District Court of Appeals of Florida, for the Fourth District has defined Ordinance and Law costs as, "the cost of bringing any structure into compliance with applicable ordinances or laws." *Jossfolk v. United Prop. & Cas. Ins. Co.*, 110 So. 3d 110, 111 (Fla. Dist. Ct. App. 2013)

#### B.   Definition of Incurring Ordinance and Law Costs

The Florida Supreme Court has held that "…to incur means to become liable for the expense, but not necessarily to have actually expended it." *Ceballo v. Citizens Prop. Ins. Corp.*, 967 So. 2d 811, 815 (Fla. 2007).

Furthermore, the United States Court of Appeals, Eleventh Circuit has held that "Dictionaries also provide support for our conclusion. Black's Law Dictionary defines "incur" as "[t]o suffer or bring on oneself (a liability or expense)". *Black's Law Dictionary* 782 (8th ed.2004)." *Philadelphia Am. Life Ins. Co. v. Buckles*, 350 F. App'x 376, 379 (11th Cir. 2009)

In the matter of *Marquez v. Nat'l Fire & Marine Ins. Co.*, with respect to law and ordinance costs, the court stated:

> "Indeed, ordinance and law coverage provides additional reimbursement to the insured, "in amounts and on other terms specified in the insurance policy, to cover costs necessary to meet applicable laws and ordinances regulating the construction, use, or repair of any property or requiring the tearing down of any property, including the costs of removing debris." *Noa v. Fla. Ins. Guar. Ass'n*, 215 So. 3d 141, 143 (Fla. 3d DCA 2017) (internal quotation marks omitted) (citation omitted).

*Marquez v. Nat'l Fire & Marine Ins. Co.*, 551 F. Supp. 3d 1313, 1328 (S.D. Fla. 2021)

### C.       Analysis of Plaintiff Incurring Ordinance and Law Costs

The court in *Marquez* went on to state with respect to an insured incurring ordinance and law costs, "that Courts in Florida at both the state and federal level have determined, under similarly worded insurance provisions, that an insured is not entitled to recover ordinance and law costs where they "*never actually incurred increased damages due to the enforcement of laws or ordinances.*" *Buckley Towers Condo., Inc.*, 395 F. App'x at 665 (emphasis added)." *Marquez* at 1328.

*Marquez* went on further in explaining the incurring of ordinance and law costs that the plaintiff there could have used as <u>one</u> "example" of incurring costs the presentation of a "permit" to prove that she in fact incurred the ordinance and law expenses. *Id.* at 1328.  *Marquez* further held that for an insured to prove that they incurred ordinance and law costs the plaintiff there first had to demonstrate that she took "affirmative steps" in some way for repairs to the property to support her position that she incurred increased costs and liability.  The Plaintiff in *Marquez* only submitted a report that **<u>recommended</u>** repairs based in part on Florida Building Code Requirements. *Id.* at 1327.  However, this instant matter is distinguishable from *Marquez* because the Plaintiff here 1) provided Defendant on April 20, 2018, an estimate and proposal through its

first contractor TGSV Enterprises with a cost breakdown of code requirement allowances for a concrete ramp, exterior railing, storefronts, handicap lift and fire protection **[SOMF ¶19 and ¶20],** 2) provided Defendant on March 10, 2020, an estimate and proposal through their second contractor, Phoenix Constructions Associates, reflecting the amount of $78,300.00 for code upgrades **[SOMF ¶38,** and 3) provided Defendant on March 13, 2020, an email attaching a letter from their architect regarding the code upgrades being **<u>required</u>** by the Miami-Dade Building Department along with the Proposal for Code Upgrades which the Insurance Company acknowledged receipt on March 16, 2020. **[SOMF ¶39]** These actions by the Plaintiff in hiring two separate contractors and an architect to inspect their property and create proposals reflecting the **required costs** for code upgrades and ordinance and law costs related to the necessary repairs must be held by this Court as the required "affirmative steps" the *Marquez* case discusses in proving an insured has incurred ordinance and law costs.

Again, the *Marquez* case is distinguishable from this instant matter in that in *Marquez* the plaintiff there only provided one estimate of "**<u>recommended</u>**" costs of ordinance and law expenses she may have suffered, where here, Plaintiff provided three proposals and a letter from their architect of code upgrades and ordinance and law costs that were "**<u>required</u>**" by the Miami-Dade Building Department. **[SOMF ¶39]**

In another matter already discussed above, the defendant insurance company attempted to argue in their motion for summary judgment that the plaintiff had not incurred any expenses, specifically arguing that the plaintiff had not become liable for any additional expense "until the City had required compliance with current ordinances in order to complete repairs." *Jossfolk v. United Prop. & Cas. Ins. Co.*, 110 So. 3d 110, 113 (Fla. Dist. Ct. App. 2013).

While the defendant in *Jossfolk* made the above argument, the court sided with the plaintiff when they reversed a ruling in favor of the defendant's motion for summary judgment in stating,

"…Jossfolk offered an affidavit from its general contractor stating that the City would **require** replacement because the original roof tiles were no longer made and could not be replaced." *Id*. at 113.

This distinction between the word "require<u>d</u>" and "<u>recommended</u>" between *Marquez* and *Jossfolk* is a necessary fact for this Court to take into consideration because the Plaintiff in this instant matter presented to Defendant **"<u>required</u>"** costs of ordinance and law costs like the plaintiff in *Jossfolk* opposed to "<u>recommended</u>" costs of ordinance and law costs like the plaintiff in *Marquez.*

In the matter of *Citizens Prop. Ins. Corp. v. Mallett* there the court held that that because they could not "exclusively establish that the costs required to bring the residence into compliance with the applicable building code were attributable solely to wind…a question of fact remains as to the amount Citizens is obliged to pay under this provision; we therefore remand for resolution of this material issue of fact." *Citizens Prop. Ins. Corp. v. Mallett*, 7 So. 3d 552, 556 (Fla. Dist. Ct. App. 2009).  Such is not the issue in this instant matter as Affiliated FM has already acknowledged the loss and paid partial payments for same loss of which parties dispute the cost of, therefore there is no question of fact that the ordinance and law costs that the Regent is faced with are related to the instant loss.

In this instant matter, on March 13, 2020, the Plaintiff sent an email to the Insurance Company attaching a letter from the architect regarding the code upgrades being "**<u>required</u>**" by the Miami-Dade Building Department along with the Proposal for Code Upgrades, which meets the same requirements expressed in both *Jossfolk* and *Marquez*, that the Plaintiff here has taken affirmative steps to incur costs associated with ordinance and law costs and thus the increased costs of ordinance and law costs are shall be tendered by Defendant in this instant matter as the relevant precedent case law requires. **[SOMF ¶39]**

**VI.     PLAINTIFF HAS INCURRED THE INCREASED EXPENSE OF INCURRING A LEASE TO RELOCATE IN ORDER TO CONTINUE ITS BUSINESS BASED ON DEFENDANT'S BREACH OF CONTRACT AND CASE LAW STATING COSTS OF REPAIR INCLUDE RELOCATION COSTS**

The Defendant must also tender payment for the leasing of additional space based on their breach of contract in affording Plaintiff insurance coverage for the loss covered pursuant to the Extra Expense Provision of the Policy. **[SOMF ¶2]**

The same definitions and analysis with respect to 'incurring costs' discussed above in **Section V. B.**, specifically the *Ceballo* opinion, apply to this analysis of incurring costs for the lease which Plaintiff needs to enter into and of which Plaintiff had informed Defendant the necessity of, **[SOMF ¶ 23]**.

In this instant matter, Plaintiff informed Defendant that they needed to execute a lease in order to continue their business activity which was interrupted by the subject loss and further interrupted by the Defendant's breach in not tendering the accurate and necessary monies associated with the costs to address the property damage.  In addition, the Insurance Company's dilatory actions frustrated the ability of the Plaintiff to begin repairs with their contractors by nickel-and-diming the proposals presented which even led to the Plaintiff's original contractor removing themselves from the project. **[SOMF ¶17, ¶25, ¶26, ¶27 and ¶28]** The Defendant even wrote back with regards to the Lease that they found it acceptable but would only pay for the Lease after it was executed and payments were made on same. **[SOMF ¶29 and ¶30]** Plaintiff argues that Defendant's assertion of the Lease first needing to be executed and payments made towards it are incorrect and that the Plaintiff is entitled to the cost of the Lease in addition to the relocation costs based on the fact intensive analysis that follows below.

In the matter of *Rost v. Bowling*, the court there stated in their analysis where the plaintiff lost his ability to conduct his business as a consequence of the defendant preventing him from

entering the leased premises where his business operated, (not unlike the inability of the Plaintiff in this instant suit to make use of their premises), that a plaintiff there is able to recover damages for losses that are the natural, direct, and necessary consequences of the breach when they are capable of being estimated by reliable data, and are such as should reasonably have been contemplated by the parties." *Rost v. Bowling*, 861 So. 2d 1246, 1247–48 (Fla. Dist. Ct. App. 2003).

In another similar matter, in *WSG W. Palm Beach Dev., LLC v. Blank*, there a tenant had to expend costs to replicate his dental practice to a new location which the court held was a foreseeable, direct, natural, and proximate result of the landlord's early termination of the lease for the premises he operated his business out of, and that due to such breach of by the defendant, the plaintiff's costs associated in replicating his dental practice to a new location were recoverable as general and special damages in the breach of contact action, and it was reasonable for the defendant there to expect that the plaintiff would need to either move his existing equipment or outfit a new location with new equipment. *WSG W. Palm Beach Dev., LLC v. Blank*, 990 So. 2d 708 (Fla. Dist. Ct. App. 2008).

Here, by virtue of the Defendant undervaluing the costs needed to bring the Property back to its pre-loss condition and in delaying the ability of the Plaintiff to begin the necessary repairs with their contactors, the Plaintiff is entitled to recover general and special damages just as the plaintiff in *WSG W.* did.  The need for the lease and the relocation costs was the foreseeable, direct, natural, and proximate result of the Plaintiff needing to relocate during the time repairs are underway that are provided for under the Extra Expenses provision of the Policy. As the need for the lease and the approval of the Lease by Defendant is not in dispute, the only matter which must now be settled is whether Plaintiff is entitled to costs of the Lease for relocation of their business even though Plaintiff did not execute the Lease.

18

On September 17, 2018 the Plaintiff provided the Lease for the Plaintiff to rent out a property located at 2275 E 11th Ave., Hialeah, FL 33013 while the repairs to the Subject Property were being performed.  The annual rent for the first twelve (12) months of the Lease was presented to the Defendant at the cost of $254,227.50. **[SOMF ¶29 and ¶30]** These damages, which are not only quantifiable, but are already established by the Lease and its costs being provided to the Defendant on September 17, 2018, cannot be disputed.

The record evidence presented above is clear and undisputed that the insurance company acknowledged that this was a covered loss and issued four (4) payments in individual installments to cover the costs of repairs, however the Defendant took the position that the relocation costs associated with the lease were not due until the lease was executed and payments were made.

The Defendant's position is misguided and unsupported. The case law does not support their contention. In the matter of *Three Palms Pointe Inc.*, the court stated "under Florida law 'direct physical loss' includes more than losses that harm the structure of the covered property. It also stands for the proposition that repair costs may include more than costs to repair the structure of a building." *Three Palms Pointe, Inc. v. State Farm Fire & Cas. Co.*, 250 F. Supp. 2d 1357, 1364 (M.D. Fla. 2003), aff'd, 362 F.3d 1317 (11th Cir. 2004)

The court went on in *Three Palms Pointe, Inc.* in their analysis, where an insurance policy did not have a "loss of use" provision that provides explicitly for coverage or payment of relocation expenses, to state that the relocation costs the plaintiff there was demanding to move to another location while repairs were underway was "covered as repair costs under the plain meaning of the Policy." *Three Palms Pointe, Inc. v. State Farm Fire & Cas. Co.*, 250 F. Supp. 2d 1357, 1365 (M.D. Fla. 2003), aff'd, 362 F.3d 1317 (11th Cir. 2004)

 As per the above case law, because the necessity of the lease, of which Defendant does not dispute, and because the need of relocating to allow the continuation of Regent's business

during the period their property was uninhabitable and inoperative the Plaintiff is entitled to the costs associated with the lease that has already been presented to the Defendant for a total of $254,227.50 over twelve (12) months.

As argued and demonstrated above by the relevant case law, because repair costs include more than just the costs to repair a structure of a building and relocation costs are covered as repairs costs under the holding of *Three Palms Poine, Inc.*, the Defendant is entitled to the costs of the lease which has already been presented to and accepted by the Defendant.

## <u>CONCLUSION</u>

For the reasons set forth herein, Regent respectfully requests this Court's entry of an Order granting Plaintiff's Motion for Summary Judgment including, without limitation, this Court's:

a. finding that the appropriate substantive law to be applied in this instant matter is the state of Florida;

b. finding that the Defendant breached the Policy by failing to pay the face value of Phoenix Construction Associations Proposal;

c. finding that the Plaintiff has incurred the increased expense of ordinance and law costs to repair the property back to its pre-loss condition;

d. finding that the Plaintiff has incurred the increased expense of incurring a lease to relocate in order to continue its business based on Defendant's breach of contract and the case law from *Three Palms Pointe, Inc. v. State Farm Fire & Cas. Co.* stating costs of repair include relocation costs.

**WHEREFORE**, the Plaintiff respectfully requests this Honorable Court find respectfully request that this Court enter an order granting the Motion and for any other further relief this Court finds just and proper.

Respectfully Submitted,

/s/ Adam S. Feldman_____
Adam S. Feldman, Esq.
Florida Bar No. 16525
Email: afeldman@cernitzlaw.com

Candise L. Shanbron
Florida Bar No. 630470
cshanbron@cernitzlaw.com

CERNITZ LAW
9350 South Dixie Highway, Suite 1220
Miami, Florida 33156
Phone: (305) 370-3255
Fax: (305) 384-7033

## <u>CERTIFICATE OF GOOD FAITH CONFERENCE</u>

Pursuant to Local rule 7.1(a)(3), I hereby certify that counsel for the Movant has conferred with counsel for the Defendant in a good faith effort to resolve the issues raised in the motion.

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on April 13, 2023 a copy of the foregoing document was served, via Email, to all counsel on the attached Service List.

/s/ Adam S. Feldman_____
Adam S. Feldman, Esq.
Florida Bar No. 16252

## **SERVICE LIST**

Adam B. Leichtling, Esquire
Florida Bar No.: 984175
255 Alhambra Circle, Suite 600
Coral Gables, FL 33134
Ph: (305) 569-4100
E-mail: ALeichtling@LL-lawfirm.com ; eservice@LL-lawfirm.com
***Counsel for the Defendant, Affiliated FM Insurance Company***